IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| TRACY L. PARRA, § | |
| PLAINTIFF § | |
| § | |
| v. § | CIVIL ACTION NO. 4:07-CV-443-Y |
| § | |
| MICHAEL J. ASTRUE, § | |
| COMMISSIONER OF SOCIAL SECURITY, § | |
| DEFENDANT. § | |

FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

FINDINGS AND CONCLUSIONS

A. STATEMENT OF THE CASE

Plaintiff Tracy L. Parra filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her claims for disability insurance benefits under Title II and supplemental security income or SSI benefits under Title XVI of the Social Security Act. Parra applied for SSI benefits on October 27, 2004, and applied for disability insurance benefits on November 4, 2004, with an alleged disability onset date of September 26, 2004. (Tr. 98). The Social Security Administration denied her applications for benefits both initially and on reconsideration, and Parra requested a

hearing before an administrative law judge (ALJ). ALJ Ward D. King held a hearing on September 19, 2006, which Parra and her representative attended. (Tr. 24-57). On January 26, 2007, the ALJ issued an unfavorable decision, finding Parra was not disabled because she was capable of performing work existing in significant numbers in the national economy. (Tr. 15-23). The Appeals Council denied Parra's request for review, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 5).

B.      STANDARD OF REVIEW

The Social Security Act defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520, 416.920. First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1527, 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. An impairment or combination of impairments is not severe if it has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work. 20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). At the third step, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the appendix to the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the

basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* §§ 404.1520(e), 416.920(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999).

At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant satisfies this responsibility, the burden shifts to the Commissioner at step five of the process to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Crowley*, 197 F.3d at 198. If the Commissioner meets this burden, the claimant must then prove that he cannot in fact perform the work suggested. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id*. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir.2000); *Hollis*, 837 F.2d at 1383.

C.  ISSUE

Parra asserts that the ALJ erred at Step Five by presenting the vocational expert with a flawed hypothetical, which resulted in a decision that is unsupported by substantial evidence.

D.  ADMINISTRATIVE RECORD

1.  Medical and Vocational History[1]

Parra was born April 23, 1962. She completed the eleventh-grade, and has worked as a sales clerk, a stock clerk, a shift leader at a fast food restaurant, and a short-order cook. (Tr. 28-30, 128).

Parra complained of stress in March 2003 due to conflicts with her teenaged daughter and problems at work. (Tr. 180, 84). Her primary care physician, Frank Lonergan, M.D., diagnosed anxiety and depression, referred her to a psychiatrist, and gave her a written excuse from work for two weeks. (Tr. 180). He also prescribed Effexor and a sleep aid, and by the end of March, Parra reported that she was doing much better. Lonergan diagnosed an acute situation stress reaction with secondary depression. (Tr. 178). In August, Lonergan opined that it would be beneficial to Parra's mental health if she changed her line of work. (Tr. 177).

Parra was hospitalized from September 26, 2004 through October 1, 2004, for cervical strain and a fracture of the thoracic vertebrae, which she sustained in an accident. Her treating physician expected the injuries would heal with conservative treatment and discharged her with instructions to continue the use of her cervical collar and back brace. (Tr. 163-74).

Lonergan opined in December 2004 that Parra's anxiety and depression imposed more than

---

[1] Parra's arguments relate to her claims of mental impairment, not her various physical impairments. Review of the administrative record will be limited accordingly.

minimal limitations. He explained that she became anxious and experienced stomach problems when she was nervous. (Tr. 176).

On January 11, 2005, James Cannici, Ph.D., performed a consultative psychological evaluation. (Tr. 188). Parra alleged that she was disabled by depression and anxiety. She had attended counseling in the 1970s and was first diagnosed with anxiety and depression in 1980. Parra also reported suffering a severe head injury when she was a teenager that left her in a coma for 3½ months. (Tr. 189). Parra attended school through the eleventh grade. Most of her work experience was in food service, but she also worked as a stocker at Walmart and as a cashier at a dollar store. Parra's current medications included Effexor, Singular, Nexium, and an antihypertensive

Parra was cooperative during the interview, but was noted to be emotionally labile. She cried frequently during the interview. Parra reported difficulty remembering things, but she was oriented and performed well on memory testing. Her intelligence was assessed as average. She stated that she required assistance for dressing, showering, and washing her hair since her accident. She cooked some meals, but did no other household chores. She watched television during the day or played a video game her daughter had given her. (Tr. 189). Cannici diagnosed an adjustment disorder with mixed anxiety and depressed mood, severe. He assigned a fair to good prognosis. (Tr. 190).

The state agency medical consultants who reviewed Parra's case initially and on reconsideration in 2005 opined that her adjustment disorder and anxiety were not severe impairments. (Tr. 205-17). They assessed mild restriction in her activities of daily living and social functioning; mild difficulty in maintaining concentration, persistence, or pace; and no episodes of

decompensation. (Tr. 215).

Parra sought treatment with Pecan Valley Mental Health and Mental Retardation (MHMR) in June 28, 2006. (Tr. 278). She reported a history of seizures, but was not on seizure medication. She complained of mood swings, sadness, anger, and constant pain, and sometimes felt like she wanted to die. Her appetite was variable and she slept four to six hours per night. She also reported seeing ghosts and feeling someone touch her. She admitted using marijuana and alcohol. She had run out of her medications in May and had no insurance and no money.

The evaluating psychiatrist, Robert Brimmer, M.D., noted that Parra had difficulty focusing. She tended to ramble and digress in giving her history. (Tr. 278-79). She also minimized her use of drugs and alcohol, but admitted having two remote convictions for driving while intoxicated. She had married and divorced twice, and had three grown children. Brimmer noted that Parra was dramatic, volatile, and teary during the mental status examination, and her effort was questionable. She identified the President, but was unable to name the capitols of Texas or the United States. She was somewhat dysphoric, but her speech was normal. She claimed to see shadows, spirits, and black things, and to hear voices. Brimmer opined that Parra's behavior was not so bizarre as to suggest schizophrenia, but her insight and judgment were limited. Brimmer diagnosed a personality disorder with naive, histrionic, borderline, dependent, and somatizing traits; multiple somatic complaints; major depressive disorder, nonpsychotic; polysubstance abuse; and a questionable history of seizures. Brimmer ordered laboratory tests and renewed Brimmer's prescription for Effexor. (Tr. 280). He also instructed her to discontinue using alcohol and drugs and to return to the clinic after she was clean and sober for two weeks to discuss increasing her Effexor prescription. (Tr. 281).

During a follow-up visit at MHMR on August 3, 2006, Parra reported feeling better, and her anxiety and crying spells had decreased. (Tr. 273). Her speech and affect were normal, her mood was euthymic, and her thought processes were logical and coherent. She reported no medication side-effects, and the MHMR staff assessed a full response to medication. (Tr. 274).

2. ALJ Decision

The ALJ found that Parra had not engaged in substantial gainful activity at any time relevant to the disability determination and had a severe combination of impairments, including degenerative changes in her cervical spine and a thoracic spine fracture, but he found that Parra had no impairments that met or equaled a listed impairment. (Tr. 16). The ALJ also concurred with the state agency medical consultants' determination that Parra had no severe mental impairment. (Tr. 16, 21).

The ALJ relied on medical expert testimony obtained during the administrative hearing to support his determination that Parra could perform light work, but could only occasionally climb ramps and stairs, stoop, crouch, or crawl; could not balance or kneel; could occasionally work overhead; could not be exposed to hazards; and needed to change positions hourly. (Tr. 21). He presented these limitations in the form of a hypothetical question posed to a vocational expert, who testified that these limitations would preclude the performance of Parra's past relevant work, but would allow for the performance of other work as a cashier, assembler, or hand packager. (Tr. 55). The ALJ accepted the vocational expert's testimony and found at Step Five that Parra was capable of performing a significant number of jobs existing in the national and local economies. (Tr. 23). Accordingly, the ALJ found Parra was not disabled and was ineligible for disability insurance or SSI

benefits.

E.  DISCUSSION

Parra asserts that the hypothetical presented to the vocational expert did not precisely set out her mental impairments; therefore, the vocational expert's testimony cannot provide substantial evidence to support the ALJ's finding that Parra was capable of performing other work that exists in significant numbers. The hypothetical presented to the vocational expert must reasonably incorporate all of the disabilities recognized by the ALJ, and the claimant or his representative must be afforded the opportunity to correct any deficiencies in the ALJ's question. *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). A claimant's failure to point out problems in a defective hypothetical does not salvage that hypothetical as a proper basis for a disability determination. *Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001).

Parra argues that the ALJ acknowledged mild deficiencies in her concentration, persistence or pace, yet incorporated no mental limitations in the hypothetical presented to the vocational expert. Parra also relies on her primary physician's opinion that she suffers from anxiety and depression resulting in more than minimal limitations; the consultative examiner's diagnosis of an adjustment disorder; and Brimmer's diagnoses of a personality disorder and major depressive disorder.

The Social Security disability regulations outline a process (referred to as "the technique") to be used for evaluation of mental impairments. First, symptoms, signs, and laboratory findings are evaluated to determine whether the claimant has a medically determinable mental impairment. 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). Once an impairment is found, the adjudicator will rate the degree of functional limitation resulting from the impairment. *Id*. §§ 404.1520a(b)(2), 416.920a(b)(2). Four broad functional areas are recognized: (1) activities of daily living; (2) social

functioning; (3) concentration, persistence, and pace; and (4) episodes of decompensation. *Id*. §§ 404.1520a(c)(3), 416.920a(c)(3). After rating the claimant's functional limitations, the adjudicator determines whether the impairment is severe or not severe given the degree of functional loss in the four given areas. *Id*. §§ 404.1520a(d), 416.920a(d). Assessment of the first three areas requires use of a five-point scale: None, mild, moderate, marked, and extreme. *Id*. §§ 404.1520a(c)(4), 416.920a(c)(4). Assessment of the fourth area requires use of a four-point scale: None, one or two, three, and four or more. *Id*. §§ 404.1520a(c)(4), 416.920a(c)(4). If the claimant has no or mild impairment in the first, second, and third areas of functioning, and no episodes of decompensation, the mental impairment is generally considered to be not severe. *Id*. §§ 404.1520a(d), 416.920a(d). If the impairment is severe, the adjudicator determines if the impairment meets or is equivalent in severity to a listed impairment. *Id*. §§ 404.1520a(d)(2), 416.920a(d)(2). If the claimant has a severe impairment that neither meets nor medically equals a listed impairment, the adjudicator proceeds to an assessment of the claimant's residual functional capacity. *Id*. §§ 404.1520a(d)(3), 416.920a(d)(3). Consistent with the regulations, the ALJ applied the technique and considered Parra's use of medication and her longitudinal history. He found no evidence that Parra's mental impairments restricted her activities of daily living or social functioning. He further found that she had only mild deficiencies of concentration, persistence, or pace, and had never experienced episodes of decompensation. Accordingly, he found that Parra's mental impairment was not severe. (Tr. 21). The ALJ's determination that Parra had no severe mental impairment is an implicit finding that her mental impairments have such minimal effect that they would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience. (Tr. 16). *See*

*Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985). *See also* 20 C.F.R. §§ 404.1520a(d), 416.920a(d).

Parra does not challenge the ALJ's finding of a non-severe mental impairment at Step Two or his assessment of her residual functional capacity, which preceded Steps Four and Five and is mirrored in the hypothetical presented to the vocational expert. In reaching his decision, the ALJ acknowledged Lonergan's opinion that Parra's mental impairments resulted in more than minimal limitation, but also noted that Effexor had alleviated her symptoms and she had not sought any specialized treatment for her mental impairments until July 2006. The ALJ further noted that Parra gave questionable effort during her July 2006 MHMR appointment and had been off her medication for several months, and there was no evidence that the deficits noted at that appointment persisted thereafter. (Tr. 21). Parra's reliance on the fact that she has been diagnosed with mental impairments is misplaced because a mere diagnosis says nothing about the severity of the condition. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)(per curiam).

The ALJ's assessment of no severe mental impairment is also consistent with the opinions of the state agency medical consultants and the testimony of the medical expert, who identified no mental impairment when asked to summarize key portions of the medical record. Parra's treatment records reflect that her symptoms responded well to medication, and her testimony likewise focused on her back impairment, not on any functional limitations attributable to her mental impairments. Parra's representative was given the opportunity to cross-examine the medical expert and vocational expert, but only asked follow-up questions related to Parra's pain complaints and posture-related restrictions in performing the jobs identified by the vocational expert. (Tr. 53, 56). The ALJ's

determination that Parra's mental impairment was not severe is supported by substantial evidence.

Parra has not shown that the ALJ presented a hypothetical to the vocational expert that was an inaccurate reflection of the work-related impairments that the ALJ found to exist or that are supported by the record. Based on that hypothetical, the vocational expert identified at least three jobs existing in significant numbers that someone of Parra's age, education, and residual functional capacity would be able to perform, and the ALJ accepted this testimony. (Tr. 22-23). The Commissioner's decision that Parra is not disabled is supported by substantial evidence and has not been shown to be a result of legal error.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within ten (10) days after the party has been served with a copy of this document. The court is hereby extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation until December 24, 2008. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made.

*See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc).

ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until December 24, 2008, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED DECEMBER 3, 2008.

    /s/   Charles Bleil
CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE